UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

OMAR JOHNSON,                )
                             )
         Plaintiff,          )
                             )
    vs.                      )   CIVIL CASE NO.   08-65-JPG-PMF
                             )
RASHIDA POLLION, *et al.*,   )
                             )
         Defendants.         )

### MEMORANDUM AND ORDER

Before the Court is defendants' combined motion for summary judgment (Doc. No. 47). Plaintiff Omar Johnson filed this § 1983 action to challenge the conditions of his confinement at Menard Correctional Center.  He alleges that defendants Rashida Pollion and Adrian Feinerman responded with deliberate indifference to his serious medical need for treatment of asthma in 2005 and 2006.  The motion is opposed (Doc. No. 60).

**I.     Summary Judgment Standard**

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The fact presented are construed in the light most favorable to the non-moving party and all reasonable and justifiable inferences are drawn in favor of that party.  *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986).  To survive a summary judgment motion, the opposing party must set forth specific facts showing that there is a genuine issue for trial.  *Vanasco v. Nat'l-Louis Univ*., 137 F.3d 962, 965 (7th Cir.1998).

## II. Background

The material facts, viewed in Johnson's favor, are summarized as follows. Prior to his incarceration, Johnson was diagnosed with asthma. He received treatment for his symptoms, including prescribed medications. He arrived at Menard Correctional Center in 1999.

The severity of Johnson's asthma symptoms fluctuate, depending upon the climate. Since June, 2000, his medical condition has been evaluated numerous times. For five years, he participated in a clinic for those who suffer chronic asthma. During these clinics, Johnson provided information about the nature and frequency of his symptoms. Various individuals assessed his ailment and his treatment needs. They prescribed an inhaler, which Johnson used to maintain good control of his symptoms, without experiencing medication side effects. The instructions issued with the inhaler warned that asthma may deteriorate acutely over a period of hours.

Defendant Pollion worked at the prison as a nurse practitioner. She had authority to prescribe medications and also had authority to discontinue prescribed medications. Pollion assessed Johnson's asthma on several occasions. She seemed rushed and frustrated and explained that she had insufficient time to review patient records. On one occasion, she forgot to give Johnson a breath test. On another occasion, she became irritated when Johnson posed questions. Yet another time, she questioned Johnson about his hair and seemed completely disinterested in his medical status.

On June 13, 2005, Pollion assessed Johnson's asthma as mild and noted that he was using prescribed medicine about twice a day. At that time, she made plans to discontinue his inhaler medicine in the future (Doc. No. 47-2, p. 25).

On October 11, 2005, Pollion discontinued Johnson's Albuterol inhaler. Pollion discontinued the medication because her assessment of Johnson's medical status led her to believe that his asthma was mild and under good control. She wrote that Johnson did not use the medication "much at all."

At the time, Pollion had been informed that Johnson recently used the inhaler to control his symptoms three times each month.  Pollion advised Johnson to report to the prison's heath care unit if he was having breathing problems and promised to issue a call pass so that Johnson's status could be reviewed the following February.  Pollion did not schedule Johnson for a check-up and did not arrange for further participation in the chronic asthma clinic.  Pollion anticipated that support staff would arrange his follow-up care.  Inmates are not at liberty to visit the health care unit without being called by a doctor or nurse.

Pollion's decision to discontinue the inhaler treatment departs from her prior decision and other decisions by doctors, nurse practitioners, registered nurses, and physician's assistants.  For example, Dr. Feinerman ordered an inhaler and a follow-up appointment with the asthma clinic after Johnson reported that he "seldom" used the medicine (Doc. No. 47-2, p. 10).

Johnson had minimal access to asthma medication for approximately nine months and no access to the resources of the asthma clinic.  In late April or early May, 2006, he suffered asthma attacks.  During these attacks, he felt pain, a hard cramping sensation in his chest and lungs, lost sleep, had difficulty breathing, and felt anxious.  He sent several requests to the health care unit, seeking care.  At times, he was able to ease his symptoms by using another inmate's asthma medicine.

At about the same time, Johnson was assigned to a work detail in the health care unit, and happened to see defendant Feinerman in a hallway.  Johnson stopped Feinerman and explained that he was having breathing problems at night due to asthma, that he had submitted sick call slips to no avail, and that he had been excluded from the chronic care clinic.  Feinerman encouraged Johnson to put in additional sick call requests and speculated that his continued participation in the clinic might have been viewed as a waste of state money.  Feinerman did not take steps to assess the status

of Johnson's asthma condition or provide treatment.

Johnson was finally summoned to the health care unit in June, 2006. He saw Pollion twice that month and informed her that he was experiencing asthma symptoms nightly. She expressed her opinion that Johnson was "addicted" to the Albuterol inhaler and denied knowledge of the potential medication side-effects. She re-prescribed medication but delegated the responsibility for dispensing an inhaler to support staff. Once again, the support staff dropped the ball. Although a note was made in Johnson's medical record suggesting that he received an inhaler, an inhaler was not actuallly dispensed to Johnson. When Johnson informed Pollion that he had not received his medication, she failed to personally obtain and dispense medicine.

On June 30, 2006, Johnson experienced severe symptoms. He was able to ease his symptoms by borrowing medicine from another inmate.

On July 1, 2006, Johnson finally received his prescribed asthma medication from a medical technician. For various reasons, Johnson did not request emergency medical care during his asthma attacks.

### III.   Exhaustion of Administrative Remedies

Defendants seek partial judgment in their favor on their affirmative defense of failure to exhaust administrative remedies. They argue that some aspects of Johnson's deliberate indifference claim were not presented to prison administrators in a timely manner. Johnson responds that prison officials were entitled to – and did – exercise discretion to accept a late grievance upon his showing of good cause.

Inmates must exhaust administrative remedies before they commence litigation regarding the conditions of their confinement. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Exhaustion requires compliance with the rules applicable to the grievance process at the inmate's institution.  *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.2002).  A directive adopted by the Illinois Department of Corrections provides that inmates must file grievances within 60 days after discovery of the incident, occurrence or problem that gives rise to the grievance and that grievances not submitted within that time frame are to be considered only upon a showing of good cause (Doc. No. 47-3 p, 2).  The Court of Appeals has recognized that timeliness determinations by corrections employees are entitled to judicial deference.  *Id.,* 286 F.3d at 1025.

Johnson filed his grievance on April 26, 2007.  His counselor assessed the timeliness question and determined that Johnson had followed the proper grievance procedure.  The grievance officer considered Johnson's position regarding his asthma treatment and recommended that the grievance be denied on the basis that his concerns were being addressed by health care staff.  The warden agreed with the grievance officer's assessment.  The Administrative Review Board and the Director of the Illinois Department of Corrections denied Johnson's appeal on the same basis (Doc. No. 1 pp. 16, 27, 37).  These materials adequately demonstrate that a good cause finding was made and that Johnson's grievance was not rejected for procedural defects but was evaluated on the merits through the last step of the administrative review process.  In these circumstances, the affirmative defense lacks merit.

### IV.     Deliberate Indifference

Both defendants argue that the evidence does not reasonably permit a finding of deliberate indifference.  This component of Johnson's Eighth Amendment claim requires that each defendant have subjective knowledge of a substantial risk to Johnson's health and must disregard that risk.  The defendant must be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and must also draw that inference. In the medical treatment context, this means that the nurse or doctor makes a decision which departs substantially from accepted judgment, practice, or standards. *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). On the other hand, a defendant who recognizes a substantial risk and responds reasonably to that risk is free from liability, even if harm is not ultimately averted. *Farmer v. Brennan*, 511 U.S. 825, 843 (1994).

<u>Defendant Pollion</u>. Johnson can show that Pollion made a poor treatment decision which was compounded when she subsequently failed to ensure that Johnson was recalled to the asthma clinic and/or provided follow-up care and medicine for his symptoms. These types of errors in medical judgment might lend considerable support to a claim of negligence. They do not suggest the substantial departure from accepted medical practice standards that is needed to bring the case into the realm of deliberate indifference. *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996)(directing courts to distinguish between deliberate indifference and medical negligence). Considering the medical record as a whole, the evidence could not support a finding that Pollion responded to Johnson's serious medical needs with deliberate indifference. Pollion's decision to discontinue Johnson's asthma medicine was not based on any expectation of harm but was based on the impression that his symptoms were mild. Also, she anticipated that Johnson would have optional access to health care and breathing treatments if his condition deteriorated. When Pollion re-prescribed medication in June, 2006, she acted reasonably in anticipating that support staff would read her progress note and dispense the medicine.

<u>Defendant Feinerman</u>. Johnson is proceeding against Feinerman on two theories. He contends that Feinerman knew that his un-medicated asthma was causing health problems and ratified

Pollion's deliberate indifference. In support of this theory, Johnson relies on his chance encounter with Feinerman in late April or early May, 2006. This information shows that Feinerman was somewhat abrupt and unsympathetic. The circumstances do not suggest that Feinerman actually drew the inference that Johnson faced a substantial risk of harm. Moreover, Feinerman's suggestion to Johnson that he put in additional sick call slips does not fall far afield of accepted medical practice standards in a prison setting.

Johnson also suggests that Feinerman's policies and procedures were deficient. On this point, the evidence shows that medical staff were on site at Menard Correctional Center 24 hours a day, seven days a week. They were trained to follow administrative directives, which gave all inmates frequent access to health care personnel. While inmates did not have unrestricted access to the health care unit, they had the right to participate in a sick call program. That program required staff members to review inmate sick call requests within 24 hours of receipt. In addition, medical emergencies were to be reviewed immediately and addressed as they occurred. Plaintiff has not demonstrated that the policies and procedures in effect in 2005 and 2006 reflect indifference to his particular medical needs.

The evidence does suggest that some members of the medical staff did not faithfully follow and comply with the applicable policies and procedures. For example, some of Johnson's sick call requests were ignored, medical records were not maintained with complete accuracy, and prescribed medication was not always delivered in a timely manner. In § 1983 litigation, Feinerman is not liable for such errors. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir.2001)(there is no respondeat superior liability under § 1983).

## V.     Causation

The defendants also argue that Johnson has failed to produce medical evidence showing that their conduct exacerbated his symptoms. A lack of medical evidence on the issue of causation can support summary judgment for the defense. *See Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008). Where – as here – treatment is delayed, there must be verifying medical evidence to establish that the delay had some detrimental effect. *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir.2007). The medical records on file attribute Johnson's symptoms in June, 2006, to a change in weather. The severity of his asthma was characterized as "mild" and in "good control," and those assessments are consistent with his earlier records (Doc. No. 47-2, pp. 26 - 28). Absent medical evidence reflecting deterioration in Johnson's medical condition due to the challenged treatment decision, the record could not support a finding of causation.[1]

## VI.     Conclusion

Defendants' combined motion for summary judgment (Doc. No. 47) is GRANTED. Judgment shall enter in favor of the defendants and against the plaintiff.

**IT IS SO ORDERED**
**DATED: March 24, 2010**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

[1] Plaintiff has described pain, increased anxiety, and breathing symptoms. While he is competent to describe his symptoms, he lacks the medical qualifications to express the opinion that his symptoms were caused by Pollion's treatment decision.